BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE TOM TORLAKSON, MEMBER OF THE STATE SENATE, has requested an opinion of this office on the following question:
Where the general municipal election for a general law city has been set by ordinance for the date of the statewide general election in November of even numbered years, may an initiative measure to repeal a city tax be submitted to the voters on the date of the statewide direct primary election in March?
 CONCLUSION
Where the general municipal election for a general law city has been set by ordinance for the date of the statewide general election in November of even numbered years, an initiative measure to repeal a city tax may be submitted to the voters on the date of the statewide direct primary election in March only if the measure statutorily qualifies to be submitted at a special election which coincides with the March primary election.
 ANALYSIS
At the November 5, 1996, statewide general election, the voters approved Proposition 218, adding article XIII C to the Constitution. Section 3 of the new article states as follows:
 "Notwithstanding any other provision of this Constitution, including, but not limited to, Sections 8 and 9 of Article II, the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax, assessment, fee or charge. The power of initiative to affect local taxes, assessments, fees and charges shall be applicable to all local governments and neither the Legislature nor any local government charter shall impose a signature requirement higher than that applicable to statewide statutory initiatives."
We are asked to interpret this constitutional provision with respect to a city that has scheduled its municipal elections to coincide with the November statewide general elections held in even numbered years. May an initiative measure to repeal a city tax be submitted to the voters at the March statewide primary election? We conclude that the measure may be put on the March ballot only if it statutorily qualifies to be submitted at a special election.
Section 1301 of the Elections Code[1] authorizes cities to schedule their general municipal elections at the same time as the March statewide primary election or the November statewide general election, or they may schedule them when school district elections are held:
". . . . . . . . . . . . . . . . . .
 "(b)(1) . . . [A] city council may enact an ordinance, pursuant to Division 10 (commencing with Section 10000), requiring its general municipal election to be held on the same day as the statewide direct primary election, the day of the statewide general election, or on the day of school district elections as set forth in Section 1302. Any ordinance adopted pursuant to this subdivision shall become operative upon approval by the board of supervisors.
"(2) . . . . . . . . . . . . . . . .
 "(c) If a city adopts an ordinance described in subdivision (b), the municipal election following the adoption of the ordinance and each municipal election thereafter shall be conducted on the date specified by the city council, in accordance with subdivision (b), unless the ordinance in question is later repealed by the city council."
Here, we are given that the city in question has chosen the November statewide general election date for holding its general municipal elections.
Section 1405 governs the procedures for submitting initiative measures to the voters of a county, city or district. It authorizes placing initiative measures on the general election ballot or holding special elections on such measures under the following terms:
 "(a) Except as provided below, the election for a county, municipal, or district initiative that qualifies pursuant to Section 9116, 9214, or 9310 shall be held not less than 88 nor more than 103 days after the date of the order of election.
 "(1) When it is legally possible to hold a special election on an initiative measure that has qualified pursuant to Section 9116, 9214, or 9310
within 180 days prior to a regular or special election occurring wholly or partially within the same territory, the election on the initiative measure may be held on the same date as, and be consolidated with, that regular or special election.
 "(2) When it is legally possible to hold a special election on an initiative measure that has qualified pursuant to Section 9116, 9214, or 9310
during the period between a regularly scheduled statewide direct primary election and a regularly scheduled statewide general election in the same year, the election on the initiative measure may be held on the same date as, and be consolidated with, the statewide general election.
 "(3) To avoid holding more than one special election within any 180-day period, the date for holding the special election on an initiative measure that has qualified pursuant to Section 9116, 9214, or 9310, may be fixed later than 103 days but at as early a date as practicable after the expiration of 180 days from the last special election.
 "(4) Not more than one special election for an initiative measure that qualifies pursuant to Section 9116, 9214, or 9310 may be held by a jurisdiction during any period of 180 days.
 "(b) The election for a county initiative that qualifies pursuant to Section 9118 shall be held at the next statewide election occurring not less that [than] 88 days after the date of the order of election. The election for a municipal or district initiative that qualifies pursuant to Section 9215
or 9311 shall be held at the jurisdiction's next regular election occurring not less than 88 days after the date of the order of election."
Subdivision (a) of section 1405 deals with the holding of special elections, while subdivision (b) deals with general elections held by counties, districts and cities. As to general election requirements, section 9118 concerns county initiative measures, section 9311
concerns district initiative measures, and city initiative measures come under the following requirements of section 9215:
 "If the initiative petition is signed by not less than 10 percent of the voters of the city, according to the last report of registration by the county elections official to the Secretary of State pursuant to Section 2187, effective at the time the notice specified in Section 9202 was published, or, in a city with 1,000 or less registered voters, by 25 percent of the voters or 100 voters of the city, whichever is the lesser number, the legislative body shall do one of the following:
 "(a) Adopt the ordinance, without alteration, at the regular meeting at which the certification of the petition is presented, or within 10 days after it is presented.
 "(b) Submit the ordinance, without alteration, to the voters pursuant to subdivision (b) of Section 1405, unless the ordinance petitioned for is required to be, or for some reason is, submitted to the voters at a special election pursuant to subdivision (a) of Section 1405.
 "(c) Order a report pursuant to Section 9212
at the regular meeting at which the certification of the petition is presented. When the report is presented to the legislative body, the legislative body shall either adopt the ordinance within 10 days or order an election pursuant to subdivision (b)."
Accordingly, a city initiative measure may be submitted to the voters at a special election or at a general election. If the latter, it is to be placed on the ballot at "the jurisdiction's next regular election occurring not less than 88 days after the date of the order of election." (§ 1405, subd. (b); see § 9215, subd. (b).)
In the circumstances presented, the "next regular election" for the city would be the November statewide general election in the next even numbered year. Although the city could have selected "the statewide direct primary election" as the date for holding its general municipal elections (§ 1301, subd. (b)(l)), it has not done so. Is there something in article XIII C, section 3 of the Constitution that would require the city to place an initiative measure to repeal a city tax on the March ballot rather than on the November ballot? It is suggested that the phrase "the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax" requires the city to place the tax initiative measure on the March ballot rather than delay the vote until the November ballot.
We reject the suggestion for a number of reasons. First, the tax initiative measure would not be subject to any disadvantage vis-a-vis other city initiative measures. No special limitation would be imposed upon the measure due to its scope or purpose. Indeed, no special limitation would be placed upon the initiative at all. Accordingly, placing the tax repeal measure on the November ballot as "the jurisdiction's next regular election" (§ 1405, subd. (b)) cannot reasonably be considered to constitute a prohibition or limitation upon "the initiative power.., in matters of reducing or repealing any local tax, assessment, fee or charge" (Cal. Const., art. XIII C, §3). We view the constitutional language "prohibited or otherwise limited" as prohibiting the treatment of tax initiative measures in a special manner that would impede their adoption or diminish their effectiveness. In the situation presented, in contrast, equality of treatment is given to tax repeal measures in placing them on the ballot.
We have examined in detail the purposes of article XIII C of the Constitution as described by the proponents of Proposition 218 in 1996. (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) argument in favor of Prop. 218, p. 76.) No indication may be found that Proposition 218 was intended to override the statutes governing when tax initiative measures are to be placed on the ballot. Simply put, the constitutional phrase "otherwise limited" may not be interpreted to require the immediate submission of such measures to the voters. Indeed, if article XIII C of the Constitution were broadly construed to exempt local tax initiatives from all constitutional and legislative regulation, it would mean that minors, prisoners, corporations, and noncitizens could vote on such measures. We decline to interpret the Constitution in a manner "[t]he voters could not reasonably have intended." (San Francisco Taxpayers Assn. v. Board of Supervisors (1992) 2 Cal.4th 571, 578; see Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735; People v. Craft (1986) 41 Cal.3d 554,561.)
It would appear from the historical circumstances surrounding the adoption of Proposition 218 that section 3 of article XIII C was intended to place in the Constitution the holding in Rossi v. Brown (1995)9 Cal.4th 688. The Supreme Court ruled in Rossi that an initiative measure to repeal a tax ordinance prospectively did not violate the constitutional ban on the exercise of the referendum power with respect to tax levies (Cal. Const., art. II, § 9), since such ban applies only to a "newly enacted measure [that] does not become effective and may not be implemented until it is approved by the voters. [Citation.]" (Id. at p. 697.) The language "Notwithstanding any other provision of this Constitution, including, but not limited to, Sections 8 and 9 of Article II, the initiative power shall not be prohibited or otherwise limited in the matters of reducing or repealing any local tax . . ." may thus be understood by reference to Rossi.
Finally, we note the constitutional language concerning petition signature requirements for local tax initiative measures not being "higher than that applicable to statewide statutory initiatives." (Cal. Const., art. XIII C, § 3.) If the phrase "shall not be prohibited or otherwise limited" in the preceding sentence of this constitutional provision were broadly interpreted to prohibit any regulation of local tax initiatives, there would be no purpose for the next sentence prohibiting higher signature requirements. Instead, we construe the two sentences of article XIII C, section 3 of the Constitution in harmony with each other, giving meaning to each. (See County of Los Angeles v. State of California (1987) 43 Cal.3d 46, 58 [constitutional provisions "must be harmonized and construed to give effect to all parts"].)
Accordingly, the petition "signature requirement . ., applicable to statewide statutory initiatives" (Cal. Const., art. XIII C, § 3) is 5 percent "of all votes for all candidates for Governor at the last gubernatorial election" (Cal. Const., art. II, § 8, subd. (b)). Construing these constitutional provisions together in a reasonable manner, we believe that in the circumstances presented, a city tax initiative measure may be placed upon the city's November election ballot with petition signatures numbering 5 percent of all votes cast in the city for Governor in the last election.
However, since it is only the Governor who "may call a special statewide election" for statewide statutory initiatives (Cal. Const., art. II, § 8, subd. (c)), the statutory 15 percent signature requirement for holding special elections on initiative measures at the city level (§ 9214) does not constitute a proscribed "higher" signature requirement. Without a signature requirement applicable to statewide statutory initiatives for calling special elections, the 15 percent statutory requirement for local special elections would thus apply when holding a special election on a tax repeal initiative. Pursuant to the terms of section 1405, subdivision (a), the special election could coincide with the March primary election.
We conclude that where the general municipal election for a general law city has been designated by ordinance as the date of the statewide general election in November of even numbered years, an initiative measure to repeal a city tax may be submitted to the voters on the date of the statewide direct primary election in March only if the measure statutorily qualifies to be submitted at a special election which coincides with the March primary election.
[1] All further statutory references are to the Elections Code.